UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KHALAIRE ALLAH,

                                                              Plaintiff,

           v.

P. SCOLESE, et al.,

                                                              Defendants.
_____

                    DECISION AND ORDER

                    18-CV-6335L

      Plaintiff Khalaire Allah, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), has sued a number of individuals, all of whom at all relevant times were employed by DOCCS, in connection with certain events that occurred in October 2015, while plaintiff was confined at Attica Correctional Facility.

      On December 10, 2018, the Court issued an order (Dkt. #12) that granted plaintiff permission to proceed *in forma pauperis*, dismissed some of his claims pursuant to 28 U.S.C. § 1915A, allowed other claims to go forward, and granted plaintiff leave to file an amended complaint. After plaintiff did so, the Court issued a second order on May 15, 2019 (Dkt. #16) that also dismissed some claims with prejudice, and allowed others to proceed. Familiarity with both those orders is assumed.

      In light of those two orders, what remains now are: (1) plaintiff's excessive-force claim against defendants Bartella, Franklin, Lawrence, Scolese and Ebert, arising out of an incident on

October 7, 2015; (2) plaintiff's equal protection claim against defendants Scolese and Bartella, (3) his failure-to-protect claim against defendants Eckert and Bartella, and (4) his retaliation claim against defendant Scolese, all relating to that same incident; (5) plaintiff's religious discrimination and equal protection claims against defendants Wagner, Chapman and Keane, related to his allegations that he was denied religious meals and prevented from maintaining hygiene in accordance with his religious beliefs; and (6) plaintiff's Eighth Amendment claim against Wagner, Chapman and Keane based on the denial of meals from October 19 to October 27, 2015.

Defendants have filed a motion for summary judgment (Dkt. #38), on the ground that plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e(a). Pursuant to the Court's August 8, 2022 scheduling order (Dkt. #39), plaintiff's response to the motion was due no later than September 8, 2022.

Plaintiff did not file any response by that deadline. On September 22, 2022, the Court received a telephone message from a person calling on plaintiff's behalf, stating that plaintiff needed more time to respond. The caller was advised that plaintiff needed to make an extension request in writing.

When no request was forthcoming, on October 25, 2022, the Court issued an Order (Dkt. #40) giving plaintiff an additional twenty days to submit a written request for an extension of time to file his response to defendants' motion. The Order also stated: "PLAINTIFF IS ADVISED THAT IF HE FAILS TO DO SO, THE COURT WILL DECIDE THE MOTION BASED SOLELY ON THE MATERIALS SUBMITTED BY DEFENDANTS IN SUPPORT OF

THEIR MOTION. IT IS SO ORDERED." Plaintiff has not submitted any extension request, and has not appeared in this action since a status conference with the Court this past June.

## DISCUSSION

### I. Plaintiff's Failure to Respond to the Summary Judgment Motion

Rule 56(e) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response by affidavits as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

The Court of Appeals for the Second Circuit has stated that when a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the possible consequences of failing to respond to the motion. *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999). In the instant case, defendants' notice of motion for summary judgment (Dkt. #38-2) and the subsequent order sent by the Court (Dkt. #39) gave plaintiff ample notice of the requirements of Rule 56 and the consequences of failing to respond properly to a motion for summary judgment. That notice was reiterated in the Court's most recent order giving plaintiff the opportunity to seek an extension of time to respond to defendants' motion. Since plaintiff has not filed any response, the Court may therefore accept the truth of defendants' factual allegations and determine whether defendants are entitled to summary judgment. *Johnson v. Annucci*, 314 F.Supp.2d 472, 474-75 (W.D.N.Y. 2018).

**II. The Merits of Defendants' Motion**

Defendants argue that plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. Defendants are correct.

As stated, the PLRA requires inmate litigants to exhaust their administrative remedies before filing suit under § 1983. See 42 U.S.C. § 1997e(a). To satisfy the PLRA's exhaustion requirement, a New York prisoner is generally required to follow the prescribed three-step grievance procedure set forth at 7 N.Y.C.R.R. § 701.5. *See Morrison v. Hartman*, 898 F.Supp.2d 577, 581 (W.D.N.Y. 2012). In short, that procedure comprises the filing of a grievance and two levels of appeal from any adverse decision. *See Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006); *Animashaun v. Afify*, 470 F.Supp.2d 294, 295 (W.D.N.Y. 2020). The final step in the process is an appeal to the Central Office Review Committee ("CORC"). All three steps of the process must ordinarily be completed before an inmate may bring suit in federal court. *See Porter v. Nussle*, 534 U.S. 516, 524 (2006); *Morrison v. Hartman*, 898 F.Supp.2d 577, 581 (W.D.N.Y. 2012).

According to defendants' unrebutted assertions of fact, in October and November of 2015, plaintiff filed a total of eleven grievances at Attica. *See* Defendants' Rule 56 Statement (Dkt. #38-1) ¶ 1; Declaration of Dianne Romanyak (Dkt. #38-3) ¶ 8; Declaration of Hillel Deutsch (Dkt. #38-4) Ex. 2. Six of those were appealed all the way to CORC. Def. R. 56 Stmt. ¶ 2; Deutsch Decl. ¶ 5 and Ex. 3.

With respect to plaintiff's claims in this lawsuit and the events giving rise to them, plaintiff's grievance records from Attica show that he did not file, much less exhaust, any grievances relating to his alleged assault on October 17, 2015. Plaintiff has presented no

evidence to the contrary, nor has he offered any explanation for why he did not do so. He states in both the original and amended complaints that he has "exhausted all administrative remedies with respect to all claims and all defendants," *see* Dkt. #1 at 17, #14 at 40, but he has provided no specifics in support of that conclusory assertion; he identifies no particular grievances, when they were filed, what they were about, or how far up the administrative ladder they were pursued.

In any event, "[u]nder well established law, a plaintiff faced with a well-supported motion for summary judgment cannot simply rest on the allegations in his complaint; he must come forward with 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Brooks v. Whiteford*, 384 F.Supp.3d 365, 370 (W.D.N.Y. 2019) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986)) (additional internal quote omitted). As explained above, plaintiff has not responded at all to defendants' motion. Plaintiff's claims arising out of the alleged assault on October 17, 2015 must therefore be dismissed for failure to exhaust administrative remedies.

Concerning plaintiff's claims that he was denied religious and other meals, plaintiff's Grievance No. 65598, dated November 4, 2015, was titled in the grievance records as "Did Not Get Religious Meal." Def. Ex. 2. Plaintiff did appeal the denial of that grievance to CORC. *Id.*

What is most significant about this grievance, however, is what it did *not* say. First, it alleged only the denial of *religious* meals; it did not allege (as plaintiff does now, in this action) that he was not given *any* meals during the period in question. Nor did plaintiff name any of the present defendants, or for that matter say anything about correction officers. Plaintiff did not allege that he was threatened, or that anyone made any comments to him indicative of discriminatory or retaliatory animus.

Although a prisoner does not necessarily have to name the responsible party or parties to satisfy the PLRA's exhaustion requirement, *see Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009), the inmate must allege facts sufficient to alert prison officials "to the nature of the claim," and "provide enough information about the conduct" at issue "to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)); *see also Espinal*, 558 F.3d at 126 ("The point is that prison officials ha[ve] the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident"); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) ("While this Court has found it appropriate to afford *pro se* inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally").

In the case at bar, plaintiff's grievance did not put officials on notice that he was raising claims of the nature presented here. As presented, the claim in the grievance appeared to allege no more than an oversight by prison staff; plaintiff wrote in his grievance that he "would like a better system in place ... ." (Dkt. #38-4 at 18.) That is also how the grievance was treated. In its decision accepting the grievance in part, CORC stated that plaintiff had been on the list to receive a religious meal during his religious fast, but that "he did not receive it because he was moved during the fast." (Dkt. #38-4 at 13.) CORC added that it "ha[d] not been presented with evidence of malfeasance by staff." *Id.* In short, nothing in the grievance suggested either that plaintiff was discriminated against on account of his religion, that he was retaliated against for having filed grievances in the past, or that he was deprived of sustenance to such an extent as to

raise Eighth Amendment concerns.[1]  This claim must therefore be dismissed for lack of exhaustion.

Plaintiff has also asserted a claim based on his allegation that he was denied the opportunity to take a shower or brush his teeth from October 19 to October 28, 2015.  He alleges that this violated his First Amendment right to practice his religion, because it prevented him from following Islamic rules concerning personal hygiene, as well as his Eighth Amendment rights.  (Dkt. #14 ¶¶ 46, 56.)

Plaintiff filed a grievance described as "No Showers or Essentials" on November 2, 2015, Def. Ex. 2, in which he alleged that during that time period, he "did not receive a single shower, no tooth brush, soap, clean matt/smock [sic] or any materials to clean the cells or [his] body."  (Def. Ex. 5 at 29.)  He alleged that this violated his constitutional rights, but he did not explain how, or specify which rights he was referring to.  The grievance made no mention of any religious aspect.

The grievance was investigated, and the officers who were on plaintiff's unit at the time submitted statements to the effect that they had not denied plaintiff any hygienic necessities such as soap, a toothbrush, etc.  Sergeant K. Keane did state that due to an "oversight," some inmates

---

[1] In his appeal statement appealing from the Superintendent's denial of his grievance, plaintiff did state that "staff maliciously and sadistically" refused to give him "religious meals – and/or any other food trays."  (Dkt. #38-4 at 20.)  That was the first and only mention of any allegations of malicious intent or the denial of regular as well as religious meals.

"[A]llegations brought up for the first time in an appeal to the CORC are not properly exhausted." *Gonzalez v. Morris*, No. 14-cv-1438, 2018 WL 1353101, at *3 (N.D.N.Y. Mar. 15, 2018).  *See*, *e.g.*, *Crichlow v. Fischer*, No. 17-cv-194, 2017 WL 6466556, at *15 n.10 (N.D.N.Y. Sept. 25, 2017).  Since these allegations were not contained in plaintiff's grievance, then, they are not properly exhausted.

had not been provided showers as often as they should have been, but that this problem had been corrected. Plaintiff's grievance was then denied. *Id.* at 33-35, 41.

According to the DOCCS grievance records, plaintiff did not appeal from the denial of this grievance. *See* Dkt. #38-4 at 7. This claim must therefore also be dismissed for failure to exhaust.[2]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #38) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 28, 2022.

---

[2] As explained in defendants' memorandum of law, Dkt. #38-5 at 10-11, the record also shows that defendants acted in accordance with then-existing policies for inmates in te Residential Crisis Treatment Program, so this claim would be subject to dismissal on the merits in any event.